UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TYRONE FRANK MANETI,

　　　　　　　　　　　Plaintiff,

　　　　　　v.

ANDREW M. SAUL,[1] Commissioner of
　Social Security,

　　　　　　　　　　　Defendant.

_____

**DECISION
and
ORDER**

**18-CV-6388F**
(**consent**)

APPEARANCES:　　　　LAW OFFICES OF KENNETH R. HILLER, PLLC
　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　KENNETH R. HILLER, and
　　　　　　　　　　ANTHONY JOHN ROONEY, of Counsel
　　　　　　　　　　6000 North Bailey Avenue, Suite 1A
　　　　　　　　　　Amherst, New York  14226

　　　　　　　　　　JAMES P. KENNEDY, JR.
　　　　　　　　　　UNITED STATES ATTORNEY
　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　Federal Centre
　　　　　　　　　　138 Delaware Avenue
　　　　　　　　　　Buffalo, New York  14202
　　　　　　　　　　　　　　and
　　　　　　　　　　KATHRYN L. SMITH
　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　100 State Street
　　　　　　　　　　Rochester, New York  14614
　　　　　　　　　　　　　　and
　　　　　　　　　　JASON PARKERSON PEEK
　　　　　　　　　　Special Assistant United States Attorney, of Counsel
　　　　　　　　　　Social Security Administration
　　　　　　　　　　Office of General Counsel
　　　　　　　　　　26 Federal Plaza – Room 3904
　　　　　　　　　　New York, New York  10278
　　　　　　　　　　　　　　and

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

DENNIS J. CANNING
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of General Counsel
601 E. 12th Street, Room 965
Kansas City, Missouri  64106

## JURISDICTION

On July 9, 2019, this matter was reassigned to the undersigned before whom the

parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in

accordance with this court's June 29, 2018 Standing Order (Dkt. 20).  The matter is

presently before the court on motions for judgment on the pleadings filed by Plaintiff on

December 18, 2018 (Dkt. 11), and by Defendant on April 9, 2019 (Dkt. 18).

## BACKGROUND

Plaintiff Tyrone Frank Maneti ("Plaintiff"), brings this action under Title II of the

Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial

review of the Commissioner of Social Security's final decision denying Plaintiff's

applications filed with the Social Security Administration ("SSA"), on March 24, 2015,

2015, for Social Security Disability Insurance ("SSDI") under Title II of the Act, and for

Social Security Supplemental Income ("SSI") under Title XVI of the Act (together,

"disability benefits").  Plaintiff alleges he became disabled on December 5, 2014, based

on a learning disability.  AR[2] at 185, 190.  Plaintiff's applications initially were denied on

May 11 and 12, 2015, AR at 53-66, and at Plaintiff's timely request, on July 18, 2017, a

hearing was held in Rochester, New York, before administrative law judge Michael W.

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 19, 2018 (Dkt. 9).

Devlin ("the ALJ). AR at 27-52. Appearing and testifying at the hearing were Plaintiff, represented by Ida M. Comerford, Esq. ("Comerford"), and vocational expert ("VE") David Festa.

On September 27, 2017, the ALJ issued a decision denying Plaintiff's claim, AR at 8-26 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council. AR at 152-54. On March 20, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 2-5. On May 25, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On December 18, 2018, Plaintiff moved for judgment on the pleadings (Dkt. 11) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum"). On April 9, 2019, Defendant moved for judgment on the pleadings (Dkt. 18) ("Defendant's Motion"), attaching the Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 18-1) ("Defendant's Memorandum"). Filed on April 30, 2019, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 19) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is remanded for calculation of benefits.

## **FACTS**[3]

Plaintiff Tyrone Frank Maneti ("Plaintiff" or "Maneti"), born March 7, 1965, was 49 years old as of December 5, 2014, his alleged disability onset date ("DOD"), and 52 years old as of October 2, 2017, the date of the ALJ's decision.  AR at 21, 185.  At age 20, Plaintiff finished high school where he attended special education classes, and has not received any further education or vocational training other than a CDL Class B (commercial) driver's license.  AR at 33-34, 134, 252, 268.  Plaintiff never married, has no children, and at the time he applied for disability benefits, lived with his mother, but as of the date of the administrative hearing, had moved into his own apartment although he continues to spend three to four days a week at his mother's apartment, and receives almost daily assistance from his mother.  AR at 32-33, 43-45, 47, 203, 252.

Plaintiff has past work experience as a garbage collector, a construction worker, and as a driver for a delivery company, with several years of full-time employment at each of these jobs, but eventually was terminated from these jobs because of an inability to focus, follow directions, and use a computer or cellular phone.  AR at 34-40, 49-51, 229.  Plaintiff also briefly worked in cleaning and maintenance at a local school, but left the job when he moved his residence.  AR at 38-39.

Plaintiff has a driver's license, has a vehicle and regularly drives to grocery shop and help his mother with errands.  AR at 47-48, 207.  Plaintiff can prepare some meals, sometimes with his mother's assistance.  AR at 206.  Plaintiff regularly receives help from his mother with regard to completing paperwork and paying bills.  AR at 43-44.  Although Plaintiff reports having a good relationship with his mother, Plaintiff also has

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

brothers with whom Plaintiff does not socialize much, nor does Plaintiff have any friends.  AR at 46-47.  Citing a desire to be alone and to stay away from people, Plaintiff explains that he is most concerned with maintaining his own home and driving his vehicle which Plaintiff considers his "freedom. . . ."  AR at 48.

On May 19, 2015, Plaintiff began receiving primary health treatment at Parma Health Center ("PHC"), in Hilton, New York, where Plaintiff was diagnosed by Arshad Masood, M.D. ("Dr. Masood"), with attention deficit disorder for which Plaintiff was referred for neurology and psychiatry consultation.  AR at 285-332.  On June 3, 2015, Plaintiff underwent a neurological consultation with Louis H. Medved, M.D. ("Dr. Medved"), whose impression was that Plaintiff's goals, including obtaining assistance in living on his own, were more appropriate for a social worker than a medical neurologist, and that formal neuropsychological testing was necessary to document Plaintiff's cognitive disability.  AR at 268-69.   Accordingly, on June 29, 2015, Plaintiff underwent an employability assessment performed by Tulio R. Ortega, M.D. ("Dr. Ortega"), a psychiatrist.  AR at 278-83.  Dr. Ortega's mental status examination of Plaintiff showed Plaintiff with a learning disability, ADHD, problems with reading and attention, and unable to follow directions.  AR at 280.  On a Monroe County Department of Human Services ("DHS") Psychological Assessment for Determination of Employability form completed by Dr. Ortega, Plaintiff is indicated as having normal functioning in maintaining basic standards of hygiene and grooming, but "very limited," *i.e.*, unable to function 25% or more of the time, as to demonstrating the capacity to follow, understand and remember simple instructions and directions, perform simple and complex tasks independently, maintain attention and concentration for role tasks, regularly attend to a

routine and maintain a schedule, and perform low stress and simple tasks.  AR at 281.

Similar employability determinations on the same DHS Determination of Employability

form were made on June 13, 2016, and November 7, 2016, by mental health

professional Katherine Pawlaczyk, LCSW ("LCSW Pawlaczyk"), from whom Plaintiff

received services at West End Psychotherapy Services.  AR at 356-59; 404-07.  On

February 23, 2016, Plaintiff underwent a psychiatric evaluation with Brad Landsman,

Ph.D. ("Dr. Landsman"), who administered an IQ test on which Plaintiff scored an

"extremely low" full-scale IQ of 65.  AR at 271-77.  Dr. Landsman also administered

achievement testing, the results of which were consistent with the performance

predicted by the cognitive testing.  AR at 275.


## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted). "Substantial evidence is more

than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id*. It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI

benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable

regulations set forth a five-step analysis the Commissioner must follow in determining

eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v.*

*Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and

the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

The first step is to determine whether the applicant is engaged in substantial gainful

activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b)

and 416.920(b). The second step is whether the applicant has a severe impairment

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirement for SSDI through December 30, 2019, AR at 13, has not engaged in substantial gainful activity since December 5, 2014, his alleged disability onset date, AR at 13, and suffers from the severe impairments of attention deficit hyperactivity disorder, adjustment disorder with depressed mood, persistent depression disorder (dysthymia), intellectual disability, and learning disability, unspecified, as well as non-severe impairments of some traits of anti-social personality disorder and avoidant features, but does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *id.* at 13-16, that Plaintiff retains the RFC to perform a full range of work at all exertional levels with the nonexertional limitations of understanding, remembering and carrying out simple instructions and tasks, occasionally interacting with co-workers and supervisors, little or no contact with the general public, working in a low stress work environment (*i.e.*, no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.), and consistently maintaining concentration and focus for up to two hours at a time, *id.* at 16-20, and that Plaintiff's RFC permits Plaintiff to perform his PRW as a garbage collector and construction worker. *Id.* at 20-21. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 21.

Plaintiff does not contest the ALJ's findings with regard to the first two steps of the five-step analysis, but argues that at the third step, the ALJ improperly discounted the opinions of Dr. Ortega, a psychiatrist, and Ms. Pawlaczyk, a social worker, whose opinions indicated Plaintiff is very limited in certain key areas, Plaintiff's Memorandum at

9-15, and also relied on an invalid IQ score, which if properly considered with the other

key criteria, establish Plaintiff meets the criteria for disability under Listing Impairment

12.05B.  Plaintiff's Memorandum at 15-18.  Defendant argues substantial evidence

supports both the ALJ's finding that Plaintiff's impairments did not meet or equal a

Listing Impairment, Defendant's Memorandum at 17-22, as well as the ALJ's

assessment of Plaintiff's RFC.  *Id.* at 22-29.  In reply, Plaintiff argues the ALJ improperly

discounted the opinions of Dr. Ortega and LSW Pawlaczyk, Plaintiff's Reply at 1-3, and

improperly determined Plaintiff's RFC without obtaining any opinion as to Plaintiff's

physical capacity for work.  *Id.* at 3.  A fair reading of the record establishes substantial

evidence supports Plaintiff meets the criteria for disability under the relevant Listing of

Impairments.

Specifically, Listing Impairment 12.05B sets forth the criteria for disability based

on intellectual disorder, including, as relevant,

> 1.  Significantly subaverage general intellectual functioning evidenced by a or b:
>     a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>     b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) or 70 or below on an individually administered standardized test of general intelligence; and
> 2.  Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>     a.  Understand, remember, or apply information (see 12.00E1); or
>     b.  Interact with others (see 12.00E2); or
>     c.  Concentrate, persist, or maintain pace (see 12.00E3); or
>     d.  Adapt or manage oneself (see 12.00E4); and
> 3.  The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B.

The parties do not dispute that Plaintiff meets the criteria under 12.05B.1 and 3, but disagree as to whether the 12.05B.2 criteria pertaining to adaptive functioning are met with the ALJ finding that despite his low IQ, there is evidence in the record that Plaintiff "has exhibited good adaptive functioning skills," including living in his own apartment which Plaintiff maintains by himself, cooking, cleaning, and doing laundry, obtaining and maintaining a commercial driver's license, and no exertional limitations. AR at 20. The record, however, does not support the ALJ's determination on this issue.

In particular, on the only three assessments in the record pertaining to adaptive functioning, *i.e.*, the DHS Psychological Assessment for Determination of Employability forms completed by Dr. Ortega on June 29, 2015, and by LCSW Pawlaczyk on June 13, 2016, and November 7, 2016, Plaintiff was consistently assessed as "very limited" functioning, *i.e.*, unable to function 25% or more of the time, with regard to at least two of the domains, including demonstrating the capacity to follow, understand and remember simple instructions and directions, perform simple and complex tasks independently, and maintain attention and concentration for role tasks. AR at 281, 358, and 406. Not only do these assessments establish Plaintiff is "markedly" limited in the domains of understanding, remembering, or applying information, as well as in maintaining concentration, persistence and pace, *see* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B(2)(a) and (c), but they are the only medical evidence in the record on this point. The ALJ, however, discounted this evidence because LCSW Pawlaczyk is not an acceptable medical source, and Dr. Ortega's assessment, formed based on only a single consultative examination, was limited to a period of less than 12 months, *i.e.*, less than the 12-months statutory threshold for disability benefits. AR at 19. Although

social workers are not considered "acceptable medical sources" under the regulations,

*see* 20 C.F.R. § 416.913(a)[5] (defining "acceptable medical sources" to include, *inter*

*alia*, licensed physicians (medical or osteopathic doctors), and psychologists), licensed

social workers are considered to be among the non-medical "other sources" from whom

evidence may be considered for purposes of considering whether a claimant is disabled

under the Act.  20 C.F.R. § 416.913(d)(3).  Accordingly, the opinions of LCSW

Pawlaczyk, from whom Plaintiff received monthly counseling services at West End

Psychotherapy Services between January 25, 2016 through February 7, 2017, AR at

343-93, should be considered.  Further, insofar as Dr. Ortega, on June 29, 2015, limited

his disability finding to three to six month, AR at 281, that on June 13, 2016, LCSW

Pawlaczyk was unable to estimate the duration of Plaintiff's disability, AR at 358, and on

November 7, 2016, estimated Plaintiff's disability was expected to continue for at least

one year, AR at 406, establishes Plaintiff's disability meets the statutory 12-months

threshold under 42 U.S.C. § 423(d)(1)(A) (providing the medically determinable physical

or mental impairment must have lasted or be expected to last for a continuous period of

not less than twelve months), and § 1382c(a)(3)(A) (same).  Although LCSW Pawlaczyk

is considered a non-medical "other source," evidence from her may still be considered

in determining the severity of an impairment, 20 C.F.R. § 416.913(d), including the

impairment's anticipated duration.  *See Camilo v. Comm'r of Soc. Sec.*, 2013 WL

5692435, at * 20 (S.D.N.Y. Oct. 2, 2013) (holding the ALJ's failure to acknowledge,

much less address, social worker's opinion that the plaintiff would be disabled for at

least 12 months, based on an impairment diagnosed by a medical doctor, was error).

---

[5] Because the regulations regarding medical and other evidence of impairment were amended effective March 27, 2017, the regulations in effect when Plaintiff filed his claim are used.

With regard to the domain of understanding, remembering, or applying

information, § 12.05B.2.a, the relevant regulations provide

> this area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.1.

The ALJ found Plaintiff has only a mild limitation in this domain, with "some deficits in

intellectual functioning," because despite being diagnosed with a learning disability, IQ

testing when Plaintiff was nine years old revealed a below average full scale IQ of 81,

and Plaintiff graduated from high school, and lives by himself.  AR at 14.  The evidence

in the record, however, shows that although IQ testing at age nine indicated Plaintiff had

a full-scale IQ of 81, AR at 200, IQ tests given prior to age 16 are not considered valid

after two years, whereas IQ scores tend to stabilize at age 16.  *Velez v. Astrue*, 2013

WL 321552, at * 4 (W.D.N.Y. Jan. 28, 2013) (quoting 20 C.F.R. Pt. 404, Subpt. P, App.

1 § 112(D)(10)).  Plaintiff's later IQ testing when Plaintiff was 50 years old thus is an

acceptable indicator of Plaintiff's IQ prior to age 22.  *See Goldthrite v. Astrue*, 2010 WL

2998660, at * 3 (W.D.N.Y. July 27, 2010) ("Absent evidence of a change in a plaintiff's

intellectual functioning, it is appropriate to assume that the results of an IQ test

administered after age 22 accurately reflects the plaintiff's IQ prior to age 22." (citing

*Vasquez-Ortiz v. Apfel*, 48 F.Supp.2d 250, 257 (W.D.N.Y. 1999) (finding the plaintiff met

the requirements for disability under § 12.05 despite not undergoing IQ testing until age

42))).  Defendant essentially concedes this point, acknowledging that although the ALJ

specifically noted Plaintiff obtained a full scale IQ score of 81 at age nine, Plaintiff's

current IQ testing showed full-scale score of 65, which is within the "extremely-low range."  Defendant's Memorandum at 20, 23.  Further, although the ALJ observed the record was not clear as to the reason for the discrepancy in IQ scores, *id.* at 20 (citing AR at 20), "'absent evidence of sudden trauma that can cause retardation, [not present in this case,] IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a person's] life.'"  *Santiago v. Astrue*, 2008 WL 2405728, at * 4 (W.D.N.Y. June 11, 2008) (bracketed material added) (quoting *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001)).  Moreover, while in school, Plaintiff attended special classes where he received below-average, often failing, grades, and required an additional three years to receive a non-Regents diploma.[6]  AR at 33-34, 197-202, 268.

Although as of the date of the administrative hearing, Plaintiff had recently obtained his own apartment, AR at 32, not only is the apartment intended for people with disabilities for which Plaintiff's intellectual developmental disability was verified by LCSW Pawlaczyk, AR at 365-69, but there is evidence in the record that the motivation for Plaintiff to move into the apartment was to reduce his 76-year old mother's "burden" and allow her to move into senior housing.  *See* AR at 46 (Plaintiff's hearing testimony that his mother moved into a "senior community"), and 269 (Dr. Medved reporting Plaintiff desired to "live and function independently and to reduce the burden on his mother").  Even after Plaintiff moved into his apartment, Plaintiff continued to spend three to four days and nights per week at his mother's apartment because he often needed help with such tasks as completing paperwork and managing his finances.  AR

---

[6] It is not clear from the record whether Plaintiff actually graduated from high school or merely aged out of eligibility for public education.  *See* AR at 198-200 (portions of Plaintiff's high school records indicating Plaintiff remained in 11th grade for at least four years, including school years 1981-82 through 1984-85, and would turn 21 on March 7, 1986).

at 32-33. This is consistent with Plaintiff's earlier failed attempt to live on his own after Plaintiff's father passed away in 2006, by staying in his father's house, but was unable to manage the upkeep so his mother sold the house. AR at 46. Plaintiff also has difficulty managing money, as evidenced by his overuse of credit cards requiring him to declare bankruptcy. AR at 45.

The ALJ determined that Plaintiff left some jobs on his own accord, AR at 20, yet a fair construction of the evidence on which the ALJ relies in making this statement fails to support it. In particular, the ALJ references the opinion of Dr. Medved stating that Plaintiff "describes his employment history as spotty, jumping from job to job. From his description, it sounds that he had quit some jobs and was terminated from others." AR at 268. Dr. Medved's statement on this point thus is, at best, equivocal. Nor did the ALJ comment on the very next sentence in Dr. Medved's report, describing "[a] common theme was apparently difficulty following directions and procedures or answering complex questions such as to people to whom he made deliveries," AR at 268, which can only be construed as consistent with Plaintiff's low intellectual functioning, as well as Plaintiff's administrative hearing testimony regarding his work history. Specifically, Plaintiff testified that he was terminated from the delivery job after only three days because he was unable to use a computer, cell phone or GPS, and constantly became lost, AR at 34-35, and was terminated from two garbage collecting jobs because he was unable to focus and was late for work. *Id.* at 35-37. A move required Plaintiff to voluntarily leave a part-time job he held for less than three months doing cleaning and maintenance for a school district, AR at 38-39, but Plaintiff was terminated from a similar job with the Village of Hilton, New York when he was unable to follow directions.

15

*Id.* at 39-40. Plaintiff also held a part-time construction job for several years, but could not handle the stress of the job. AR at 39.

In short, nothing in the record supports the ALJ's determination that Plaintiff has only a mild limitation as to understanding, remembering, and applying information as provided under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B.2.a.

With regard to the domain of concentration, persistence, and maintaining pace, § 12.05B.2.c, the relevant regulation provides

> this area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.3.

The ALJ found Plaintiff has a moderate limitation attributed to Plaintiff's attention deficit hyperactivity disorder for which Plaintiff takes medication, and that Plaintiff was limited only with regard to his ability to maintain attention and concentration for rote tasks. AR at 14. Nothing in the record, however, indicates that despite being limited as to maintaining attention and concentration for rote tasks, Plaintiff is not similarly limited with regard to non-rote tasks, a point not addressed by either the ALJ or Defendant. It simply exceeds the limits of common sense that a disability claimant with deficits in the domain of concentration, persistence and maintaining pace as to "rote tasks" would not also have such deficits with regard to more complex tasks.

Moreover, as discussed in connection with the domain of understanding, remembering, and applying information, Discussion, *supra*, at 14-16, there is a plethora

of evidence in the record that Plaintiff is markedly limited insofar as Plaintiff remained in high school for three years beyond what generally is required to graduate, repeating classes in special education, and has been terminated from several jobs because of Plaintiff's inability to satisfactorily complete tasks, including making deliveries and collecting garbage, in accordance with the requirements of such jobs.  Significantly, although Plaintiff did manage to obtain a CDL after several tries, he never used the license for work because Plaintiff is unable to use a computer or cell phone.  AR at 334, 419.

Accordingly, substantial evidence in the record establishes Plaintiff is markedly limited in the domain of concentrating, persisting or maintaining pace, as defined under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05B.2.c.  The determination that Plaintiff is markedly limited in the domains of understanding, remembering, or applying information, as well as in concentrating, persisting or maintaining pace establishes Plaintiff meets the requirements for disability under Listing Impairment § 12.05B.  Moreover, having found Plaintiff meets the criteria for disability based on a Listing Impairment, the inquiry ceases.  20 C.F.R. § 416.920(d) (providing claimant who meets or equals criteria of a Listing Impairment is considered disabled without regard to age, education, and work experience).  Accordingly, the matter is REMANDED for calculation of benefits.

Mindful of the often painfully slow process by which disability determinations are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), district courts may therefore "when appropriate set a time limit for action by

the administrative tribunal, and this is often done." *Zambrana v. Califano,* 651 F.2d 842, 844 (2d Cir. 1981) (citing cases). *See also Michaels v. Colvin*, 621 Fed.App'x. 35, 41 (2d Cir. 2015) (directing upon remand for further fact-finding at step five that given eight years had elapsed since the plaintiff filed for disability benefits, the further administrative proceedings were to be completed within 120 days, with the Commissioner's final decision to be rendered within 60 days of any appeal by the plaintiff from the ALJ's decision, and citing *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (imposing time limit on remand where "the past delay is of such magnitude – years – that a time limit is imperative") *as amended on reh'g in part*, 416 F.3d 101, 106 (2d Cir. 2005) (providing that if deadlines for further administrative proceedings at the fifth step, on which the Commissioner bears the burden of proof, are not met, "a calculation of benefits owed [plaintiff] must be made immediately)).

Here, Plaintiff filed his application for disability on March 24, 2015 (R. 185), testified at an administrative hearing on July 18, 2017 (R. 27-52), received the ALJ's Decision finding Plaintiff not disabled on September 27, 2017 (R. 8-26), and the Appeals Council's denial on March 20, 2018. (R. 2-5). As it has been more than four years since Plaintiff first filed his application for disability, further delay for remand is a hardship this Plaintiff should not bear. The Commissioner's calculation of benefits should therefore be completed within 120 days of this Decision and Order. *See Dambrowski v. Astrue,* 590 F.Supp.2d 579, 588 (S.D.N.Y. 2008) (imposing a time limit of 120 days for subsequent proceedings when five years had passed since Plaintiff filed his application).

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is GRANTED; Defendant's

Motion (Dkt. 18) is DENIED; the matter is remanded to the Commissioner for calculation

of benefits.  The Clerk of Court is directed to close the file.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       September 25th, 2019
             Buffalo, New York